UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


SORRELL EUGENE HUFF,

                          Petitioner,

-vs-                                                    Case No.  8:04-cv-765-T-24EAJ

JAMES V. CROSBY, JR.,

                          Respondent.
_____/

## ORDER

    This cause is before the Court on Petitioner Sorrell Eugene Huff (Huff's) 28 U.S.C.

§ 2254 petition for writ of habeas corpus.  Huff challenges his convictions and sentences

entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida.

    On June 13, 2001, Huff was convicted after jury trial.[1]  On June 14, 2001, he was

sentenced,  in Hillsborough County Case No. 0101004 for the following offenses:[2]

| | | |
|---|---|---|
| Count One: | Sexual Battery | Sentence: 15 years |
| Count Four: | Kidnaping | Sentence: NATURAL LIFE |
| Count Five: | Aggravated Battery | Sentence: 15 years |
| Count Seven: | Aggravated Battery | Sentence:  15 years |
| Count Nine: | Aggravated Battery | Sentence:  15 years |
| Count Six: | Assault | Sentence:   time served |

---

[1] The jury trial was held before the Honorable Jack Espinosa, Circuit Judge, June 11-13, 2001.

[2] Huff was originally charged with nine felony offenses, including attempted murder. Following his jury trial, Huff was found not guilty of the attempted murder charge and not guilty of two counts of sexual battery with a deadly weapon.

The sentences, other than the time-served sentence for count six, ran consecutive to the sentence imposed in Count Four. (I,  R-68).[3]

<u>FACTUAL BACKGROUND  FROM  THE TRIAL TESTIMONY</u>

The victims were Huff's former girlfriend, Cynthia Green, and her 18-year old daughter, Shondra Williams-Dawson.

On the evening of January 21, 2001, Huff and Williams-Dawson were at home when Huff confronted her with accusations that her mother, Cynthia Green, was "cheating" on him. Huff demanded that Williams-Dawson tell him with whom. (V3, T 157).[4] Huff used his fist to strike Williams-Dawson's face, then put his foot on her neck, forced her to lie down flat, and "hog-tied" her from the back, with her hands and feet together. (V3, T 157-159). Huff took out a silver knife, put it up to her neck and threatened to kill Williams-Dawson if she screamed again.  (V3, T 160; 164-165)   When Williams-Dawson was unable to stand up as he directed, Huff punched her repeatedly in her ribs.  Williams-Dawson fell to the ground and Huff beat her and then carried her to her mother's room. (V3, T 161). Every time Williams-Dawson denied knowing anything about her mother's relationship with another man, Huff hit her; he also "kneed" her in the ribs. (V3, T 162; 165). After Huff dropped Williams-Dawson on her mother's bed, he cut off her panties with the knife, cut her face three times, and threatened to cut out her eye. (V3, T 163).  He stuffed a sock in her

---

[3] Respondent filed the record on appeal as Composite Exhibit A..  The Index  indicated which parts of the record on appeal are numbered  at the bottom of the page.  The pages that are so numbered are cited with the letter "R" followed by the page number.

[4]  The trial transcript is divided into volumes. Citations to the trial transcript will be designated by the Volume Number and the page number.  The page number(s) refer to the number at the top right corner of the page.

-2-

mouth, tied a pillow case around her face and repeatedly punched her. Huff also hit her in the face with a cordless telephone. (V3, T 163-164).

Huff told Williams-Dawson that he could either kill her; he could paralyze her and she could watch her sister and mother die, or she could have sex with him.  (V3, T 166). After repeatedly beating, threatening, and cutting his crying victim, Huff forced Williams-Dawson to bend over and inserted his penis into her vagina. Then, he removed the fabric from around her mouth and put his penis in her mouth. Next, he threw her back on the bed and again inserted his penis into her vagina.  Finally, Huff again forced Williams-Dawson to bend over, and had forced anal sexual intercourse with her. (V3, T 166-168). Huff eventually put Williams-Dawson into the closet, pointed a gun at her, and told her, "Don't make me kill you    . . . If they die it's your fault. " (V3, T171).

After Williams-Dawson heard Huff leave and the car drive away, she eventually untied the restraints, put on a skirt, grabbed a butcher knife from the kitchen, and ran to a neighbor's house for help. (V3, T 174-175).   When the police arrived, she was taken by ambulance to the hospital emergency room. (V3, T 175-176). She had multiple facial fractures involving her upper jaw and left  cheekbone and left eye, which was swollen shut. The floor of her eye socket collapsed; her upper jaw was fractured between her two front teeth, splitting her palate in half; her cheekbone  was shattered. (V4 T 340-343).

After beating and raping Williams-Dawson, Huff left the house and "picked up" Cynthia Green at work about 9:45 p.m. Huff and Green initially sat in his car and talked. When Green received a telephone call from her sister-in-law, she got out of the car and tried to call her home. At that point, Huff also got out of the car, grabbed Green's shirt, pulled out a butcher knife, asked the identity of the caller, and then tried to stab Green. (V4,

T 261). Huff told Green, "I am going to kill you . . . You won't cheat on anyone else," and he started beating Green's face. (V4, T 262). Huff grabbed Green by the hair, pulled her inside the building, and then demanded and received Green's money ($107). (V4  T 265). When Huff left, Green called 911. (V4, T 265).

On January 22, 2001, Huff surrendered at the Hillsborough County Sheriff's Office. On January 23, 2001, Huff was interviewed by Detective Connell. (V4, T 309). During the interview, Huff admitted that he "lost it" and began beating  Williams-Dawson. (V4, T 312-313). Subsequently, Huff was charged with, among other things, two counts of aggravated battery against Williams-Dawson. (Counts five and seven, found in the record at I R 15-16). Count five of the information alleged aggravated battery by "intentionally or knowingly causing great bodily harm, permanent disability or permanent disfigurement" and also alleged the use of a deadly weapon -- the knife that Huff used to cut Williams-Dawson's face.  Huff was also charged with aggravated assault in count six.  Count six charged that Huff "did intentionally and unlawfully threaten by word or act to do violence to the person of SHONDRA WILLIAMS-DAWSON, coupled with an apparent ability to do so . . . and in doing so did use a deadly weapon, to-wit:  a firearm, without intent to kill SHONDRA WILLIAMS-DAWSON." (I R 16).

At the conclusion of defense counsel Ursula Richardson's [5]  opening statement, she stated:

> He [Huff] is charged with nine counts. There are two things Mr. Huff wants to be held responsible for and that's aggravated battery and that's putting his hands on her [Williams Dawson].  Also aggravated battery on Cynthia Green."

---

[5] Ursula Richardson was an assistant public defender.

-4-

You will hear about a gun through out the course of this trial.   You won't hear any gun was recovered. You will hear about a knife and Mr. Huff when he turns himself in has a pocket knife.   He hands that over to the detective.  It's not the knife that is used in the incident.  One thing I want you to pay attention to is that Mr. Huff has long fingernails.   When you are listening to these facts that you may hear about knives and things like that also take into consideration what you will see from him the length of his nails. You at the end of this case will see no weapons were used except for his fist. No gun was pulled out other than the weapons that were his fist.  He is guilty only of aggravated battery on Shondra Dawson [sic] and Cynthia Green.

(V3, T 146-147).

The prosecutor asked the state trial court  to inquire as to whether Huff agreed with Attorney Richardson's "strategy" of "concessions regarding the counts." (V3, T 148). Defense counsel stated that Huff personally agreed with her concession of guilt on the aggravated battery charges.  (V3, T 148).  Thereafter, the state trial court inquired:

> THE COURT:    You agree with the lawyer about some of the concessions she has made?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand and agree with it?
>
> THE DEFENDANT: Yes, sir.

(V3, T 148).

## PROCEDURAL HISTORY

A recitation of the procedural history of Huff's criminal conviction is not necessary to the resolution of his habeas claims because Respondent does not dispute the timeliness of the petition or assert that the claims are not exhausted in state court.

## STANDARD OF REVIEW

Because Huff filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA).  Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002).  The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell v. Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]).   AEDPA is relevant to a review of this Petition.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Price v. Vincent, 123 S.Ct. 1848, 1852-53 (2003); Clark v. Crosby, 335 F.3d 1303, 1308 (11th Cir. 2003); Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir. 2001).  "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. Lockyer v. Andrade, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is contrary to clearly established governing federal law.  Mitchell v. Esparza, 124 S.Ct. 7, 10

(2003); Clark v. Crosby, 335 F.3d at 1308-10; Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). See also Price v. Vincent, 123 S.Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75-77. A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell v. Esparza, 124 S.Ct. at 10; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford

-7-

v. Visciotti,  537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El  v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4  (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

No Presumption that State Court Ignored Its Procedural Rules

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. See Coleman, 501 U.S. 722,  735-36 (1991);  Kight  v. Singletary, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91.  The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

## INEFFECTIVE ASSISTANCE OF COUNSEL

On post-conviction review, the state trial court correctly analyzed the claims under the standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984), and reasonably concluded that trial counsel provided effective assistance.  In order to show a violation of the Sixth Amendment right to counsel, Huff must satisfy the Strickland two-pronged inquiry. First, Huff must demonstrate that the attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, Huff "'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

## DISCUSSION

A review of the record demonstrates that, for the following reasons, Huff's petition must be **DENIED**.

## Grounds One and Two

In ground one, Huff contends that he was denied effective assistance of counsel because counsel conceded Huff's guilt to the jury without Huff's "intelligent and voluntary consent."   In ground two, Huff contends that the state trial court erred by failing to conduct a proper Boykin hearing to determine whether Huff intelligently and voluntarily consented to counsel's strategy of conceding guilt to the jury.

Grounds one and two allege a hybrid ineffective assistance of trial counsel/<u>Boykin</u> claim derived, presumably, from the Florida Supreme Court's opinion in <u>Nixon v. State</u>, 857 So. 2d 172 (Fla. 2003), <u>review granted</u>, <u>Florida v. Nixon</u>, 124 S.Ct. 1509 (2004). Relying, in part, on a prior Florida Supreme Court opinion, <u>Nixon v. Singletary</u>, 758 So. 2d 624 (Fla. 2000)), the state trial court denied relief on Huff's first two claims explaining that:

> For Defendant's claim to prevail, it must be established, the record must reflect that there was not an affirmative, explicit acceptance by Defendant of counsel's strategy. <u>Nixon v. State</u>, [sic] 758 So. 2d 624. Defendant was asked by the Court whether he agreed with the lawyer about some of the concessions she made regarding Defendant's guilt. Defendant replied "yes." Defendant was asked again, "you understand and agree with it?" Defendant replied "Yes, sir." (See June 12, 2001 Transcript, pages 147-148, attached). Because trial counsel and the trial court did in fact secure Defendant's consent, Defendant has failed to show that trial counsel's performance was deficient. Defendant has failed to meet the first prong of <u>Strickland</u> in that he has failed to prove statements made by trial counsel were made without his consent. Since Defendant has failed to meet the first prong of <u>Strickland</u>, it is unnecessary to address the prejudice component. As such, no relief is warranted upon ground one.

> As to ground two, Defendant alleges that the trial Court applied an incorrect legal standard upon accepting Defendant's waiver of his constitutional right, as a knowing, intelligent and valid waiver of said right. Based on the case law and testimony, which defeats Defendant's claim in ground one, Defendant's claim in ground two is without merit. As such, no relief is warranted upon ground two.

(Exhibit D, p. 4)

<u>Florida Supreme Court Nixon Decision</u>

Although a majority of the Florida Supreme Court agreed that Nixon's trial counsel made a strategic decision that was effective and reasonably calculated to help his client avoid a death sentence, the Florida Supreme Court determined that absent "affirmative, explicit consent" by Nixon to his counsel's trial strategy, the adoption of that strategy was ineffective per se under <u>United States v. Cronic</u>, 466 U.S. 648 (1984). <u>Nixon</u>, 857 So. 2d

172, 176.  The Florida Supreme Court also concluded that trial counsel's strategy was the functional equivalent of a guilty plea, and the waiver standard of guilty pleas, as set out in Boykin v. Alabama, 395 U.S. 238 (1969), should be applied.

United States Supreme Court Nixon Decision

In Florida v. Nixon, 125 S.Ct. 551 (2004), the Supreme Court disagreed with the Florida Supreme Court and held that defense counsel's failure to obtain defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial did not automatically render counsel's performance deficient. Furthermore, the Court held that counsel's effectiveness should not be evaluated under the Cronic standards, but under the standard prescribed in Strickland:  "Did counsel's representation fall below an objective standard of reasonableness?"

In the present case, there was no improper concession of guilt without Huff's consent.  However, Huff's explicit consent, on the record, was not required under federal law for trial counsel to seek a verdict on a lesser offense on Huff's behalf.[6]

In the present case, trial counsel's agreed-upon concession did not surrender Huff's right to a jury trial; and, in fact, Huff was acquitted of the enhanced weapons charges and the charge of attempted murder.  Defense counsel required the State to bear its burden of proof beyond a reasonable doubt.  See, e.g., United States v. Gomes, 177 F.3d 76, 84 (1st Cir. 1999)("[Appellant's] cursory analogy to a guilty plea without safeguards   . . .  is a false one . . . . Here the government had to provide a jury with admissible evidence of guilt

---

[6]   The United States Supreme Court has addressed only four fundamental areas that are reserved to the defendant personally: "[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."  Jones v. Barnes, 463 U.S. 745, 751 (1983).

and did so in abundance."). In Huff's case, defense counsel's statements were neither evidence nor stipulation, and did not relieve the State of its burden to present evidence or to prove guilt beyond a reasonable doubt, as the State recognized and as the trial court expressly charged the jury.

Grounds one and two do not warrant federal habeas corpus relief.

Ground Three

Huff alleges that counsel was ineffective for failing to call exculpatory witnesses. The state trial court denied post-conviction relief on this ground of ineffective assistance of trial counsel, explaining that:

> In ground six, Defendant alleges trial counsel was ineffective for failing to investigate, interview or depose potential witnesses. In cases involving claims of ineffective assistance of counsel for failure to investigate and interview witnesses, facially sufficient postconviction motions must include: identity of prospective witnesses; substance of witnesses testimony; and explanation as to how omission of such evidence prejudiced the outcome of the trial. Highsmith v. State, 617 So. 2d 825 (Fla. 1st DCA 1993). (See June 12, 2001 transcript, pages 240-244, attached) . Considering the concessions made by Defendant's counsel and accepted by Defendant, as discussed above in response to Defendant's first ground, and admissions made by Defendant during sentencing on June 14, 2001, Defendant fails to prove how the omission of evidence, in the form of depositions, interviews, or further investigation prejudiced the outcome of the trial. In light of Defendant's own admissions to the very acts he is now challenging, he has failed to explain how omission of evidence that is related to these admissions prejudiced the outcome of trial. (See June 12, 2001 Transcript, pages 144-148, attached). As such, no relief is warranted.

(Exhibit B)

Huff points to no overlooked evidence that would materially impeach the victims' accounts or diminish Huff's own admissions.  Huff does not set forth a sufficient basis to conclude there was a reasonable probability of a different outcome had his counsel conducted further investigation of other individuals, none of whom witnessed any of the

-12-

criminal offenses.  Huff has not overcome the presumption of correctness of  the state trial court's factual findings. 28 U.S.C. § 2254(e). Nor does Huff meet his AEDPA burden with regard to both prongs of <u>Strickland</u>.  In view of the compelling evidence of Huff's guilt, it is objectively reasonable to conclude there was no reasonable probability of a different outcome had counsel presented additional witnesses.  Accordingly, the state decision on ground three resulted in a reasonable application of <u>Strickland</u> and a reasonable determination of the facts in light of the evidence.

Ground three does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Huff's petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Huff and to close this case.

ORDERED at Tampa, Florida, on August 29, 2005.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Sorrell E. Huff